Case No. 23-6052, Lawrence Allen v. Dustin Fait et al. Argument is not to exceed 15 minutes per side. Mr. Smith, you may proceed for the appellant. Thank you. Good afternoon, and may it please the Court. My name is Christopher Smith for the appellant, Lawrence Allen. We are here on, I should say it's my honor to appear for the first time before the Sixth Circuit, if only in the confines of my office. But we are here on a wrongful conviction case on what should be normally a pretty straightforward question, which is when did this claim accrue and when did the statute of limitations start running? What makes it complicated, of course, is this Heck Doctrine or the McDonough Doctrine, as the District Court characterized it. And then on top of that, this intervening change in law when the Supreme Court decided Thompson v. Clark on April 4, 2022. So our simple answer for when this claim accrued is when that case was decided, because the claim could not have accrued when the charges were dismissed under then-existing law because there was a deal made with the prosecution. And the deal was Mr. Allen was in jail the day that he made that deal. He was still incarcerated at Rutherford County Jail. And the deal was that they would drop the charges for assault. The aggravated rape charge was dismissed if he would plead guilty to a different assault charge, not a sexual assault charge. And so under existing law in the Sixth Circuit, Jones v. Clark County, he would not have been able to file this lawsuit, let's say, the next day. If he had tried to do that, he would have been thrown out on the idea that you made a deal with the prosecution. You did not meet favorable termination of a malicious prosecution claim. I have a question about whether or not there was a favorable termination. I take it your position is notwithstanding that your client pled guilty to a count, there was nonetheless favorable termination here. Is that your position? Yes, Your Honor. At trial, he was convicted of aggravated rape and a misdemeanor assault charge. He was also acquitted at trial of a second aggravated rape charge. When his conviction is reversed, it's remanded for a new trial. It's not vacated. I'm not sure that makes a big difference here. But it's still on the books until it's expunged. But set that aside. He then gets the charges dropped April 8, 2021. That's a guilty plea to a now upgraded felony assault charge that was never the initial charge. That had been a misdemeanor charge. And the aggravated rape charge is dismissed. Your Honor raises an interesting point, which under existing Sixth Circuit law at the time, no one raised this at the district court, but there was this case called the City of Napoleon, Chiaverini v. City of Napoleon. And under Sixth Circuit doctrine at that time, even this would probably not constitute favorable termination because you're pleading guilty to a related sort of lesser included charge, even if they drop the other one. Well, the Supreme Court reversed that actually after our brief was filed. June 20, 2024, Chiaverini et al. v. City of Napoleon. So any doubt about that, Your Honor, I think is resolved with that case, which was decided June 20, 2024. Do we focus then on the guilty plea in April of 2021? Or do we focus on the order of dismissal of the domestic assault and aggravated robbery charges in terms of a favorable termination, if that makes sense? It does. And I guess this is where I would say that the expungement really matters because of the way the Tennessee law works in terms of imposing collateral consequences. But certainly the dismissal of charges would constitute favorable termination. That's what the Supreme Court said in Thompson v. Clark. So moving forward, that could potentially in some states, I want to caution, be the date of accrual and therefore the date of the running of statute of limitations, assuming those are the same thing, which they are not necessarily, which I could get into more deeply. But I think moving forward now that Thompson v. Clark has been decided in some states, if there's no lingering consequence, if the conviction is not still on the books and imposing things like you can't register to vote, you can't run for office, you can't serve on a jury, then it could be that dismissal of charges would be the date of accrual. But I think you have to kind of examine how the criminal case was dispensed of, if that makes sense. I guess I'm a little confused because I thought that Thompson was talking about once you had a dismissal of the charges, that that was the favorable termination requirement, not the collateral consequences, that that could go on. Well, what case are you pointing to to say that you have to consider all the collateral consequences and until those have been eliminated, you don't have an accrual? Well, to take your honors question on Thompson v. Clark, there the idea was you needed an affirmative indication of innocence even to satisfy the favorable termination prong. It didn't really address accrual necessarily, statute of limitations, and it just said that all that you need is a charge that does not end in conviction. What case are you relying on for the accrual being when the expungement occurred? Well, we would point to the habeas case that was cited in our brief, Gall v. Scroggie and the Gentry case, where that's an interesting case actually. The Gall case, because a federal court had invalidated a conviction arising out of Kentucky, and for whatever reason the state court did not expunge the conviction. And so Mr. Scroggie was trying to get a federal court, excuse me, Mr. Gall, the plaintiff was trying to get the federal court to expunge a state court conviction. And that case is very similar in saying that presuming, in fact, collateral consequences and recognizing not exactly a statute of limitations, but that there was no waiver by delay in terms of it took a long time to file his state charges, his state challenges, trying to get the courts of Kentucky to enforce this expungement, and they just wouldn't do it. And that actually raises a different question that I might as well get into now. But that wasn't a statute of limitations case. Is that what you're saying? Not exactly. But you have a statute of limitations case that talks about accrual being when the expungement occurs. Not, can you guys hear me? Looks like we froze up here. Yes, we can hear you. It froze on me. I do not have a case exactly like that. What I do have is several cases saying that, you know, like McDonough does, that just because you could file the case doesn't mean the statute of limitations is running. McDonough, I think, is a very important case. Savory v. Cannon, which the court cited in the 7th Circuit, the district court cited, excuse me, there are other ways that the claim could have accrued. For example, Savory v. Cannon was a parole case. And then the parole was commuted. And the district court said your statute of limitations runs because your sentence has been commuted. That would have been a pretty straightforward application of the heck rule that you have to have the sentence invalidated. The sentence had been commuted. Let's suppose that we don't have much time left. Let's suppose we disagree with you that we think the accrual was actually earlier than the expungement, actually, when the district court issued its ruling or judgment. Then you're relying upon equitable tolling, as I understand it. Is that correct? You have to rely on equitable tolling at that point if we went that direction? I don't think so, Your Honor, because that would still go back to my point about Thompson v. Clark and the fact that he would have been barred, you know, even at that time until that decision came down. Under Jones v. Clark County and the Al-Makal case, I think that the district court misconstrued Jones to somehow be permitting Mr. Allen's claims. I frankly think that was error. It's tolled until Thompson came down from the Supreme Court and it accrues at that point. I think that's your argument, isn't it? Yeah, well, that would be my fallback argument if you don't go there on expungement, yes, Your Honor. But that would then be timely. I'm interested in what's the argument, what's your reasoning for that approach if we went that route of saying when Thompson came down, what authority do you have for that kind of an argument? In terms of this intervening change in law, we haven't briefed that, unfortunately. That part wasn't raised at the district court level. But I guess you're right, that would be essentially an equitable argument, and we've got that briefed in terms of the injustice here and then also the lack of prejudice to defendants who, of course, are still free to allege qualified immunity and raise all those merits-based defenses if we prevail and get a remand here. When do you think the quickest date you could have filed a claim for habeas corpus this time? Or habeas corpus? But any voucher claim against the parties here? Well, the way that we construe that, Your Honor, would be after Thompson v. Clark was decided. So that would be April 5th, 2022. Yes, Your Honor. I don't believe so. I think it would have been thrown out under Sixth Circuit law at the time. I see my time's up. I'm going to go a little bit over to ask you this question. Let's suppose Thompson is the accrual or the date that you're trying to key off of. What would be, in your view, a reasonable time period after Thompson? I mean, like, for instance, say you had waited, you know, 10 years or whatever. You would agree that would have been too long to wait under equitable tolling to bring this. How long would it take to process Thompson in order to know that you have a cause of action? Well, as we briefed, he certainly filed within one year of the applicable statute. In fact, it was from February 4th, 2022, is Thompson. And excuse me, April 4th, 2022, is Thompson. February 7th, 2023, is when he filed. So that's roughly 10 months, I think. I mean, I've been handling a different matter under a criminal case. There's a concept, you know, reasonable diligence. In the habeas case that I cited, Gall v. Scroggie, I think that took, you know, several years. But I certainly don't think the court has to write a bright-line rule on that. I mean, it might be a case-by-case basis with equity factors balancing. But here, there's no question that it was within one year from the date of Thompson. In fact, more like 10 months. So, I mean, there might be a factual determination about, you know, the reasonable diligence of the plaintiffs in seeking that kind of state challenge and that relief. I would just say practically, you know, I think most plaintiffs in this position would act pretty quickly. I mean, they're under disabilities imposed by state law. They're trying to get their convictions expunged. But that's my best answer to that one. Okay. Do the other judges have any questions? Okay, counsel, your rebuttal time is reserved. We'll hear now from Mr. Burns. Mr. Burns, can you hear me? Yes, you may proceed. Okay, thank you very much. Again, I apologize for the technical issues that I had here on my end. A couple of things to – well, first of all, for the record, this is Robert Burns, and I represent the town of Smyrna and Dustin Fayette in this action on this appeal. We think that this case is not as complicated. We think it is more straightforward as the district court set forth in its opinion. We think that the arguments that the plaintiff is raising here today and in the briefing thus far have gotten a bit convoluted. For the record, I would like to point out there's been some discussion on the argument today about the collateral consequences argument and analysis. We've raised the issue that that had been waived because it was not subsequently discussed at the district court level. It was only raised by a footnote. I want the court to be aware of that. Here we think that the argument is straightforward. Tennessee has a one-year statute of limitations on a claim of this type, on a 1983 case of this type. We think that the last date on which Mr. Allen should have filed this suit was April 8, 2022, which would have been one year after him receiving notice of the criminal charges being disposed of the Rutherford County Circuit Court. Now, obviously, we're here today on a Rule 12 motion to dismiss, so neither Mr. Smith nor I have the benefit of any discovery that would have been taken and that would have been presented to the court by a motion for summary judgment. We don't know what Mr. Allen's thinking was and why it took as long as what he did. We don't know when he got to Mr. Smith and he started to represent him. I would point out, though, that Mr. Allen was represented through the state court trial proceedings and up through the criminal appeal by judges in Murphy Square, Tennessee, not suggesting that there was any issue of malpractice or anything that was not said that could or should have been said, but clearly he was represented by counsel and he was being advised of what his rights were at the time. Mr. Burns, I want this, Judge Cole, I wonder if I could just direct your attention to this Thompson versus Clark decision. Mr. Allen relies on that pretty heavily. I mean, how do you think Thompson factors into our analysis? Well, I'm not certain that it should, Judge, because at the time when it came out, that law did not exist as of that point in time, and I'm still not certain that as the court just questioned Mr. Smith on, one of you asked, well, what do you think is a reasonable period of time? Mr. Smith's response was that, well, he filed the case within one year of the February date. But this case we submit still creates the possibility that if everything is tied back to an expungement and there's nothing in Tennessee that I'm aware of from a statutory perspective that says that you have to wait for a certain period of time or you can't pursue an expungement for a certain period of time, it essentially creates what I think is a floating or moving statute of limitations. And Mr. Smith has made the point that the defendants are not prejudiced, that we can still raise the defense of qualified immunity. Well, that's certainly true, but let's say hypothetically here if you accept Mr. Allen's argument and if everything is now tied to the idea of expungement and he's not under any type of timeline or requirement to seek and receive those expungements by a date certain, how long after do we have to wait? I mean, there's a question about witness availability, document availability. I mean, statutes of limitation we all know exist for a purpose. We need certainty. We need clarity. And this Mr. Allen's whole argument seems to be based on with this lawsuit seems to be based on the idea that he can pick and choose the date on which he files his lawsuit based upon when he seeks the expungement. Mr. Burns, sometimes we agree with you that expungement is not a cruel date, that it really was the date that the district court entered the judgment. We still have this question of equitable tolling, though, which is the fact that I mean, my reading of it is Thompson clarified what the law was. It seemed like under our Sixth Circuit authority, it was not clear that that there was a cause of action that could be brought here. But Thompson seemed to clarify that. So why shouldn't we use the fact the date of the Thompson decision as really for polling purposes when the statute of limitations begins to run? Well, even if again, hypothetically, Your Honor, even if we do do that, I don't think that the plaintiff in this case, based upon what is in his complaint, has alleged sufficiently enough to convince the court that he's entitled to a finding or ruling here of equitable tolling. We set out in our response brief the five factors that relate to equitable tolling, and we've argued that he does not and should not meet one of them. And again, it goes, I would again submit to the court, there's an issue of prejudice to the defendants in terms of the ability to defend the underlying lawsuit. There's been no showing that that I'm aware of. And again, it's not contained in the complaint itself of any ignorance or disability under which Mr. Allen was operating at the time that to me, at least for argument purposes, would kind of open the door, crack it open for this court to be more sympathetic to the excuse me, to the idea of equitable tolling. We decide that it is a matter of equitable tolling. Shouldn't the district court rule on that originally before we do in order to find out whether there was any equitable reason for this? Well, Your Honor, I hate to concede that point, but I think I might have to as a matter of law and procedure. I think that the district court could do that. But this record is also before you in the same form as what Judge Richardson had. And even though that was not an issue that was substantively ruled upon, I would submit that for purposes of judicial economy, you all can make that decision just as well as Judge Richardson can. We're not dealing with facts here per se. We're dealing with a rule 12 motion to dismiss what's contained in the complaint. And there was nothing raised that I can recall when the complaint was filed in on February 7, 2023, that flushes out anything that would support the argument of equitable tolling at this point. Well, let me ask you, Mr. Burns, you've made the point that there would be, I think you argue, prejudice to your client if equitable tolling were permitted here. I mean, what showing of prejudice has there been? It seems that it's just a passage of time. Yes. Yeah, yeah. Because, you know, as soon as the complaint was filed, the defendant's response was it was to file the rule 12 motion to dismiss. And Mr. Smith and I, the parties did not engage in any discovery. So I candidly I can't give you specific facts to say that this is what happened. This is what we don't know. This is what we cannot now get that we could have gotten had the lawsuit been filed earlier. So I acknowledge that. But I still think if we're looking at the complaint and what was alleged and and and how we are here before the Sixth Circuit today, I'm just not certain. And I'm far from convinced that Mr. Allen has made out a showing for equitable tolling. When do you think the plaintiff could have first filed this? In other words, could Mr. Allen have filed it the day he got released from jail or was there some specific? Well, yes, sir. I would submit that maybe I'll answer that question, but I'll answer it by saying that the last date I think on which the lawsuit could have been filed was April 8, 2022, because that was one year following the entry on the rule docket by the Rutherford County Circuit Court, saying that the case had been disposed of, that it was over, that it was finished. And I would submit that he knew or should have known he was represented by counsel. And when you consider what he had been through, you know, as tumultuous as it may have been, one would reasonably think that at some point in time, having been released now from jail and not having to serve the rest of that sentence, he might be looking around and thinking, who can I sue? And if I do sue, how do I do it? And when should I do it? They had a full year from April 8, 2021. And I understand, you know, he pursued the expungement as was his right. But if he had the idea of expungement on his mind and he still, you know, that all of this was not completely cleared up for him, I think that one also has to ask, why did it take from April of 2021 until February of 2022 to get that expungement in place? He could have started the process of getting the expungement on the day that the Rutherford County Circuit Court disposed of the charges. And again, if you want some delay, that's a good example of it. I mean, candidly, if you look at the timeline here, you can also take into account and consider that from April 8, 2022, which I would submit is the last date on which he should have filed suit. He had the expungement in hand on February 8, 2022. So on the timeline here, that's not disputed. It is what it is. He had 59 days within the one year statute of limitations period, which we say would apply in control here. Understand it's not a year. It's not a lot of time. But if he's represented by counsel, somebody could have seen this. He still had nearly two months from the date that he got the expungement to still come within the one year that we say applies here. Well, Mr. President, let me just ask that the Supreme Court's decision and Thompson came down, I think, just four days before the statute of limitations expired. If we have the timing, ironic on April 8 of 21, I think it is. So that was only four days to get the suit filed. So if Thompson applies. Am I right? If Thompson tells us that that's when the favorable termination first occurred, then there's only four days for him to file a lawsuit. Well, under that analysis, Judge, yeah, we'd all have to agree with that. That's correct. But then that opens the window back to the argument of equitable tolling and whether that should apply here or not. We've argued that it should not. And I would repeat that today as well. Well, I'm not sure if I'm out of time. I since I don't have the timer in front of me and I've not kept track of when we started. You've got a little over two minutes left. OK, well, I would I would reiterate that the timeline on which the defense of this appeal was set up is what should apply. I believe that the district court's analysis was the appropriate analysis. Judge Richardson provided a very, very thorough, I would say, cerebral, frankly, analysis of both the law and the timeline that we have here. And this court should affirm his decision, granting my client's motion to dismiss. Let me ask you this. Do you agree that the Thompson case applies here or it's relevant? Oh, well, it can't be ignored. It can't be it. It can't be overlooked and not considered. My concern, though, is that there's a lot of time and a lot or a chunk of the timeline, if you will, that that goes back to the triggering of events, if you will. It started the timeline for Mr. Allen. All occurred before Thompson was issued. And I candidly judge to tell you, I don't think that Thompson I've looked at Thompson before for another case. I don't think there's any language in there about retrospective or perspective application. And I to thoroughly answer your question, I'd have to review Thompson again for that purpose. That's all that I can say. OK, Mr. Burns, the other judges have any more questions. OK, thank you. Thank you, Mr. Burns. We'll now hear a rebuttal. Thank you. I think you're on mute. That's all I'm saying is, are you able to hear me? Thank you. I did just want to address a few of those points to to the charges that we are making a convoluted argument. I would point out that the district court's opinion was 45 pages and had 48 footnotes. So I don't think I don't think it's my fault necessarily that this is, you know, kind of difficult material to wade through to the to the question about should the district court address equitable tooling in the first instance. I believe that that's already happened. I think the court weighed those factors and ruled against us. So I think it's properly for this panel to decide or. Thank you. Necessary to have any discovery or that further hearing at the district court level on equitable polling. Well, we would certainly take the opportunity to do it if, you know, but I think that looking over our briefing on this, there is the Kutarsky Kucharsky case, which is an eastern district case. That was a similar situation where in the intervening development of that case, the Supreme Court decided incidentally Wallace versus Cato, which is a very important case in this area. And I would just look at the rule, which I think also addresses another question. And the court reason there, the plaintiff may obtain relief from a statute of limitations if the delay in filing, quote, is the product of an understandable confusion about the legal nature of her claim. That confusion is created by the courts themselves. And the delay does not result simply from the plaintiff's lack of diligence. And that gets back to what I was saying about, well, there could be a reasonable diligence standard. It's already sort of incorporated in this Kucharsky case. So if that answers the court's question, no, I think you could probably address that right now on the briefs that we've submitted. But we would certainly take the opportunity to talk about why Mr. Allen wasn't sitting on his hand. Yeah, I guess what's really I'm struggling with is I understand your argument that Taylor or Thompson really changed the law here, it seems to me. But did you really need a whole year to digest Thompson? Couldn't you have digested it within a month at most and then brought the lawsuit? Why do you need tolling for over a year or a year after Thompson or almost a year? Well, again, I don't I don't see how the claim could have accrued if Sixth Circuit law says if you make a deal with the prosecution, you do not have favorable termination. How could the claim have accrued when the charges were dismissed? So I would read Thompson as at best the accrual date of the claim. And so then you would really have one year from that day. I mean, I don't know how his claim could have accrued before he had favorable termination. That is why we say because Thompson has got to be the date that this accrued. But in terms of why did he not know about it? Why did it take so long? I guess we could we could have depositions about that or put him under oath and explain, you know, why, why did it take so long? You know, why did you wait to get expungement? But again, the timeline is tight. I think that he was diligently pursuing his rights just even based on what's in the record. And then to this last point about, you know, the plaintiff is creating a moving target. I would go or a floating statute of limitations. I would go back to the McDonough case. Okay. McDonough was a fabrication of evidence case. And then the argument was your claim accrues when fabricated evidence is used against you. And you know it because you now you have a complete and present cause of action. And the court said that's not that we're going to extend that out to the acquittal, which is what happened in McDonough. That could have taken a hold. You could have had appeals. And we see this on Savory versus Cannon. You have appeals. It gets remanded. You have a new trial. That gets results in acquittal. It's a feature of this doctrine, of the Heck doctrine, that it can take a long time for a claim to accrue. That is not a plaintiff creating his own statute of limitations. That's just the accrual doctrine of Heck. I believe that's my last point in rebuttal unless there's any questions. What's your best case for saying that you can do equitable tolling if there is a change in interpretation of case law that affects your knowledge of a claim? Your Honor, that's the same one that I just mentioned. It's on the Kucharski case. Kucharski versus LaVille 526F2D768. So you don't have an appellate decision. It's just a district court decision? As I sit here today, no, but I would love to go shepherd that right now and get back to you. But I know I'm out of time. But I think that that and that in my just looking at my briefing is quoting something. So they're very well maybe. I just don't, as I sit here today, have that ready. But your primary claim, I guess as I hear it, is that favorable termination did not occur essentially until Thompson versus Clark came out April 4 of 2022. And that's when the claim accrued. So your client had until April 3 or April 4 of 2023 to file the lawsuit, and the lawsuit got filed in February. That is exactly right. Is that summing it up? That is our position, that he could not have filed this lawsuit until Thompson was decided. He would have been thrown out. With all due respect to the district court who ruled otherwise, just don't understand how Jones versus Clark County, which was a presidential opinion of the Sixth Circuit applying the onimus rule, he would have been barred. And so for that reason, the Thompson case is the approval date. At the earliest, of course, we would argue that until the conviction is under the Gull versus Scroggie case, which we would encourage the court to consider that as well, the expungement argument. But to your point, the simpler argument is that the Thompson versus Clark is the approval date. Thank you. Thank you. Okay. I think those are all of our questions. Thank you, counsel, for both sides today, and we'll take the case under submission.